**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com
         mroberts@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK YOCKEY, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>SALESFORCE, INC.,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Patrick Yockey ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, make the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action suit brought against Defendant Salesforce, Inc. ("Defendant" or "Salesforce") for wiretapping the electronic communications of visitors to Rite Aid's website, riteaid.com (the "Website").[1] The wiretaps, which are embedded in the chat function on the Website, are used by Defendant to secretly observe and record website visitors' electronic communications, including the entry of Personally Identifiable Information ("PII") and Protected Health Information ("PHI") in a chat function, in real time. By doing so, Defendant has violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA").

2. On or about September 13, 2022, Mr. Yockey visited the Website. During the visit, Defendant recorded and thereby intercepted Plaintiff's electronic communications in real time (*i.e.*, the PII and PHI Mr. Yockey entered into a live chat function with a customer service representative).

3. Plaintiff brings this action on behalf of himself and a class of all persons whose electronic communications were intercepted through the use of Defendant's wiretap on the Website.

**THE PARTIES**

4. Plaintiff Patrick Yockey is a Pennsylvania resident and citizen who lives in New Kensington, Pennsylvania. Mr. Yockey has browsed the Rite Aid website on multiple occasions from his computer and his phone and has utilized the chat function on the website in order to discuss his prescription history and his Rite Aid customer rewards with customer service agents. One such instance was on or about September 13, 2022. Mr. Yockey was in New Kensington, Pennsylvania when he visited the Website. During the visit, Mr. Yockey's electronic

---

[1] RITE AID, https://www.riteaid.com/#/ (last accessed December 13, 2022).

1 communications he entered in the chat function—including communications related to his
2 prescription history and Rite Aid customer rewards, among other PII and PHI—were intercepted in
3 real time and were disclosed to Defendant through the wiretap. Mr. Yockey was unaware at the
4 time that his electronic communications, including the information described above, were being
5 intercepted in real-time and would be disclosed to Salesforce, nor did Mr. Yockey provide his prior
6 consent to the same.

7   5.   Defendant Salesforce, Inc. is a Delaware company with its principal place of business
8 at 415 Mission Street, 3rd Floor, San Francisco, California 94105.

9   6.   Salesforce is a marketing software-as-a-service ("SaaS") company, primarily
10 offering Customer Relationship Management (CRM) software and applications focused on sales,
11 customer service, marketing, automation, analytics, and application development.

12   7.   Salesforce is one of the largest companies in the world, with a market capitalization
13 of over $153 billion as of September 19, 2022.

**JURISDICTION AND VENUE**

15   8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)
16 because this case is a class action where the aggregate claims of all members of the proposed class
17 are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the
18 proposed class is citizen of state different from at least one Defendant.

19   9.   This Court has personal jurisdiction over Defendant because Defendant's principal
20 place of business is in California.

21   10.   Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because
22 Defendant resides in this District.

**STATEMENT OF FACTS**

24 **I.   Overview Of The Wiretaps**

25   11.   Defendant Salesforce offers for sale a software service called "Chat," which is a
26 combination of a basic customer service chat function and backend analytics tools to ostensibly
27 improves a company's customer service experience.

28   12.   The Chat service can be used with any website, as Chat is an Application

1  Programming Interface (API) that can be "plugged into" an existing website.  The Chat API is run
2  from Salesforce web servers but allows for chat functionality on the third-party company's website.
3  A company must purchase a license from Salesforce to use the Chat feature on their website.

4      13.    In short, Salesforce runs the Chat service from its servers, but customers interact
5  with the Chat service on a separate company's website.  Rite Aid is one of those companies.  Thus,
6  whenever a chat message is sent from Plaintiff to Rite Aid customer service, it is first routed
7  through a Salesforce server.

8      14.    The Chat service needs to run on Salesforce servers because Salesforce analyzes the
9  customer-support agent interactions in real time to create live transcripts of communications as they
10 occur, among other services.

11     15.    The Live Agent Administrator Manual (the "Manual") from Salesforce notes that
12 "Chat transcripts are created automatically and are meant to provide a paper trail about your agents'
13 interactions with customers."

14     16.    The Manual further provides that supervisors can view transcripts in real time.  This
15 is accomplished because the contents of the chat are being routed through Salesforce webservers in
16 real time, and then sent to the supervisor requesting the live transcript.

17     17.    Thus, by enabling the Chat function, Salesforce is able to record the other electronic
18 communications of visitors to websites where the code is installed.  It also allows Defendant to
19 track the amount of time spent on the website, geographic location of the visitor, and other
20 information described above.

18. An example of this transmission of data can be seen in the image below. As a chat message is sent to the Rite Aid customer service representative (*picture left*), network traffic simultaneously flows through a Salesforce web server directly to Salesforce (*picture lower right*). The image depicts a mouse hovering over the last "(pending)" message, revealing the Salesforce URL to which the message was sent.



19. Thus, through the Chat function, Salesforce directly receives the electronic communications of visitors to various websites, including Rite Aid's, in real time. Accordingly, as currently deployed on Rite Aid's website, Salesforce's Chat function functions as a wiretap.

## II. Defendant Wiretapped Plaintiff's Electronic Communications

20. On or about September 13, 2022, and on multiple prior dates, Mr. Yockey visited the Rite Aid website while in Pennsylvania. During those visits Mr. Yockey used the Chat function to speak with a Rite Aid agent about his prescription history and his Rite Aid Member Rewards program.

21. During those visits, Salesforce, through the Chat function, intercepted the content of

1 Plaintiff's electronic communications with the Rite Aid agent in real time, including information 2 related to Plaintiff's prescription history and Rite Aid Member Rewards program.  The Salesforce 3 wiretap also captured the date and time of the visits, the duration of the visits, Plaintiff's IP 4 addresses, his locations at the time of the visits, his browser types, and the operating system on his 5 devices.

22. Salesforce's recording of electronic begins the moment a user accesses or interacts with the Chat feature on Rite Aid's website, prior to a user consenting to any sort of privacy policy or the wiretaps generally.  Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to Salesforce, as opposed to just the Rite Aid customer service agent.

23. When many users, including Mr. Yockey, access the Chat function on Rite Aid's website, they speak with a customer service agent about sensitive medical information, such as their medical conditions and their prescription history.  Salesforce's Chat function captures these electronic communications throughout the interaction.

24. Users, including Mr. Yockey, are thus not on notice of any wiretapping when they begin a Chat interaction, nor do they provide their prior consent to the same.

25. Mr. Yockey and other Class Members accessed Rite Aid's website through their internet browsers in Pennsylvania.  Upon having their browsers access the website in Pennsylvania, Salesforce's Chat function instructed the browser in Pennsylvania to send electronic communications directly to it from the Pennsylvania location to Saleforce's servers.

## CLASS ACTION ALLEGATIONS

26. Plaintiff seeks to represent a class of all Pennsylvania residents who used Salesforce's Chat function on a website while in Pennsylvania, and whose electronic communications were intercepted or recorded by Salesforce (the "Class").  Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

27. Plaintiff seeks to represent a class of all Pennsylvania residents who used Salesforce's Chat function on Rite Aid's website while in Pennsylvania, and whose electronic

communications were intercepted or recorded by Salesforce (the "Subclass").

28. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclass number in the thousands. The precise number of Class and Subclass Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class and Subclass Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

29. Common questions of law and fact exist as to all Class and Subclass Members and predominate over questions affecting only individual Class and Subclass Members. Common legal and factual questions include, but are not limited to, whether Defendant has violated the WESCA; and whether Class and Subclass Members are entitled to actual and/or statutory damages for the aforementioned violations.

30. The claims of the named Plaintiff are typical of the claims of the Class and Subclass because the named Plaintiff, like all other class members, visited Rite Aid's website and had his electronic communications intercepted and disclosed to Salesforce through the use of Salesforce's Chat function.

31. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class and Subclass Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class and Subclass Members will be fairly and adequately protected by Plaintiff and his counsel.

32. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass Members. Each individual Class and Subclass Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device

presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation of Pennsylvania Wiretap Act**
**18 Pa. Cons. Stat. § 5701, et seq.**

33. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

34. Plaintiff brings this claim individually and on behalf of the Class and Subclass against Defendant.

35. The WESCA prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication.  18 Pa. Cons. Stat. §§ 5703(1)-(3).

36. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(A).

37. At all relevant times, by using the Live Transcript feature of its Chat API, Defendant intentionally intercepted, used, and disclosed the electronic communications between Plaintiff and Class Members on the one hand, and website customer service agents on the other hand.

38. At all relevant times, by using the Live Transcript feature of its Chat API, Defendant intentionally intercepted, used, and disclosed the electronic communications between Plaintiff and Subclass Members on the one hand, and Rite Aid customer service agents on the other hand.

39. Plaintiff and the putative Class and Subclass Members did not provide their prior consent to having their electronic communications intercepted by Defendant.

40. Plaintiff and the putative Class and Subclass Members had a justified expectation under the circumstances that their electronic communications would not be intercepted by Defendant. Plaintiff and Class and Subclass Members were communicating sensitive PII and PHI, which they accordingly and reasonably believed would only be accessed by the Rite Aid customer service agent with whom they were corresponding, and not by a third party like Salesforce.

41. Because use of the Live Transcript feature of its Chat API is not disclosed, Plaintiff and the putative class members were not aware that their electronic communications were being intercepted by Salesforce.

42. Plaintiff and putative class members seek all relief available under 18 Pa. Cons. Stat. § 5725(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23, naming Plaintiff as the representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order declaring that the Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: December 21, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   /s/ *L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
          mroberts@bursor.com

*Attorneys for Plaintiff*