**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com
          mroberts@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK YOCKEY and PEARL MAGPAYO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SALESFORCE, INC., <br><br> Defendant. | Case No. 4:22-cv-09067-JST <br><br> Hon. Jon S. Tigar <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Patrick Yockey and Pearl Magpayo ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Salesforce, Inc. ("Defendant" or "Salesforce") for wiretapping the electronic communications of visitors to various websites, including Rite Aid's (riteaid.com) and Kaiser Permanente's (https://healthy.kaiserpermanente.org/front-door) websites (the "Websites"). These Websites employ Salesforce, a third party, to provide chat functions on the Websites. The electronic communications made in the chat function are routed through the servers of and are used by Salesforce to, among other things, secretly observe, record, and analyze Website visitors' electronic communications in real time, including the entry of Personally Identifiable Information ("PII") and Protected Health Information ("PHI"). By doing so, Defendant has violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA") and the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

2. Plaintiffs bring this action on behalf of all persons whose electronic communications were intercepted or recorded by Salesforce on any Website via the Chat.

## THE PARTIES

3. Plaintiff Patrick Yockey is a Pennsylvania resident and citizen who lives in New Kensington, Pennsylvania. Mr. Yockey has browsed the Rite Aid website on multiple occasions and has utilized the chat function on the website to discuss his prescription history and his Rite Aid customer rewards with customer service agents, including as recently as September 13, 2022. Mr. Yockey was in Pennsylvania each time he visited the Website. During each website visit, Mr. Yockey's electronic communications (*i.e.*, the words Mr. Yockey typed in the chat function)—including communications related to his prescription history and Rite Aid customer rewards, among other PII and PHI—were intercepted in real time and were disclosed to Defendant through the wiretap. Mr. Yockey was unaware at the time that his electronic communications, including the

information described above, were being intercepted in real-time and would be disclosed to Salesforce, nor did Mr. Yockey provide his prior consent to the same. Mr. Yockey was unaware at the time that his electronic communications were being intercepted in real-time and would be disclosed to Salesforce. Mr. Yockey was not asked for, nor did he provide his prior consent to, disclosure of her chats to Salesforce.

4.     Plaintiff Pearl Magpayo is a California resident and citizen who resides in Hayward, California. Ms. Magpayo has browsed the Kaiser Permanente website on multiple occasions has utilized the chat function on the website to discuss her insurance and other medical information with customer service agents, including most recently in early Fall 2022. Ms. Magpayo was in California each time she visited the website. During each website visit, Ms. Magpayo's electronic communications (*i.e.*, the words Ms. Magpayo typed in the chat function)—including communications related to certain medical conditions and her insurance information, among other PII and PHI—were intercepted in real time and were disclosed to Defendant through the wiretap. Ms. Magpayo was unaware at the time that her electronic communications were being intercepted in real-time and would be disclosed to Salesforce. Ms. Magpayo was not asked for, nor did she provide her prior consent to, disclosure of her chats to Salesforce.

5.     Defendant Salesforce, Inc. is a Delaware company with its principal place of business at 415 Mission Street, 3rd Floor, San Francisco, California 94105.

6.     Salesforce is a marketing software-as-a-service ("SaaS") company, primarily offering Customer Relationship Management (CRM) software and applications focused on sales, customer service, marketing, automation, analytics, and application development.

7.     Salesforce is one of the largest companies in the world, with a market capitalization of over $153 billion as of September 19, 2022.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

10. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

## STATEMENT OF FACTS

### I. Overview Of The Wiretaps

11. Salesforce offers for sale a software service called "Chat," which is a combination of a basic customer service chat function and backend analytics tools to ostensibly improves a company's customer service experience.

12. The Chat service can be used with any website, as Chat is an Application Programming Interface (API) that can be "plugged into" an existing website. The Chat API is run from Salesforce web servers but allows for chat functionality on the contracting company's website. A company must purchase a license from Salesforce to use the Chat feature on their website.

13. In short, Salesforce runs the Chat service from its servers, but customers interact with the Chat service on a separate company's website. Rite Aid and Kaiser Permanente are examples of these companies. Thus, whenever a chat message is sent from a website visitor to a Rite Aid or Kaiser Permanente customer service agent, it is first routed through a Salesforce server.

14. The Chat service needs to run on Salesforce servers because Salesforce analyzes the customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services.

15. The Live Agent Administrator Manual (the "Manual") from Salesforce notes that "Chat transcripts are created automatically and are meant to provide a paper trail about your agents' interactions with customers."

16. The Manual further provides that supervisors can view transcripts in real time. This is accomplished because the contents of the chat are being routed through Salesforce webservers in real time, and then sent to the supervisor requesting the live transcript.

17. Thus, through the Chat function, Salesforce is able to record the other electronic communications of visitors to websites where the code is installed, including the content of all chat

1  communications between a website and visitors to the website.  It also allows Defendant to track the
2  amount of time spent on the website, geographic location of the visitor, and other information
3  described above.
4          18.     Examples of these transmissions of data can be seen in the images below.  As to Rite
5  Aid, as a chat message is sent to a Rite Aid customer service representative (*picture left*), network
6  traffic simultaneously flows through a Salesforce web server directly to Salesforce (*picture lower
7  right*), as indicated by the "request URL" and "referrer" being "salesforceliveagent.com" (meaning
8  the messages are being sent to Salesforce):



          19.     Similarly, as to Kaiser Permanente, as chat messages are exchanged between the
website visitor and a Kaiser Permanente customer service representative (*picture left*), network
traffic simultaneously flows through a Salesforce web server directly to Salesforce (*picture right*),
as indicated by the "request URL" and "referrer" being "salesforceliveagent.com" (meaning the
messages are being sent to Salesforce):



20. Thus, through the Chat function, Salesforce directly receives the electronic communications of visitors to various websites, including Rite Aid's and Kaiser Permanente's, in real time.

21. Salesforce's Chat also has a "Sneak Peek" feature, which is operating on the Websites as indicated below:

//
//
//
//
//

[Screenshot of Rite Aid Support chat window in Google Chrome with DevTools panel open showing numerous "ChasitorSneakPeek" entries highlighted in a red box]

//
//
//
//
//
//
//
//
//
//
//
//
//

//

//

//

//

//

//

//

22. When "Sneak Peek" is enabled on a website (such as the ones listed above), as the below screenshots of a demonstration of Sneak Peek indicate, anything that "an end user" types is displayed on Salesforce's dashboard[1]:





23. More invasively, the "Sneak Peak" feature transmits what a user is communicating to a website *before* a user actually sends the chat. In other words, if a user simply types something

---

[1] HOW TO SETUP SNEAK PEEK IN SALESFORCE CHAT?, https://youtu.be/lGDdRcVBPzU.

1  into the Chat function, the message is transmitted to Salesforce before "Send" is clicked:



24. Accordingly, as currently deployed on the Websitex, Salesforce's Chat API constitutes wiretapping.

25. When Chat is used on a website conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Chat involves Salesforce—a separate and distinct third-party entity from the parties to the conversation—using Chat to eavesdrop upon, record, extra data from, and analyze a conversation to which they are not a party. This is because Salesforce itself is collecting the content of any conversation. That data is then analyzed by Salesforce before being provided to any entity that was a party to the conversation (like Rite Aid or Kaiser Permanente).

II. **Defendant Wiretapped Plaintiff's Electronic Communications**

26. Plaintiffs each visited the Website as set forth above. During those visits, Plaintiffs used the Chat function to speak with live agents on the respective Websites.

27. During those visits, Salesforce, through the Chat function, intercepted the content of Plaintiff Yockey's electronic communications with the Rite Aid customer service agent in real time and Plaintiff Magpayo's electronic communications with the Kaiser Permanente customer service agent in real time. The Salesforce wiretap also captured the date and time of those visits, the duration of the visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser

types, and the operating system of their devices.

28. Salesforce's recording of electronic begins the moment a user accesses or interacts with the Chat feature on the Website, prior to a user consenting to any sort of privacy policy or the wiretaps generally. Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to Salesforce, as opposed to just the Website customer service agent.

29. Users, including Plaintiffs, are thus not on notice of any wiretapping when they begin a Chat interaction, nor do they provide their prior consent to the same.

30. When many users, including Plaintiff Yockey, access the Chat function on Rite Aid's website, they speak with a customer service agent about sensitive medical information, such as their medical conditions and their prescription history. Salesforce's Chat function captures these electronic communications throughout the interaction.

31. When many users, including Plaintiff Magpayo, access the Chat function on Kaiser Permanente's website, they speak with a customer service agent about sensitive medical and insurance information, such as their medical conditions and their insurance records. Salesforce's Chat function captures these electronic communications throughout the interaction.

32. Plaintiff Yockey was in Pennsylvania when he accessed the Rite Aid website through his internet browser. Upon having his browser access the Rite Aid website in Pennsylvania, Salesforce's Chat function instructed the browser in Pennsylvania to send electronic communications directly to it from the Pennsylvania location of the browser to Salesforce's servers, which are located in California.

33. Plaintiff Magpayo was in California when she accessed Kaiser Permanente's website through her internet browser. Upon having her browser access the Kaiser Permanente website in California, Salesforce's Chat function instructed the browser in California to send electronic communications directly to it from the California location of the browser to Salesforce's servers, which are also located in California.

34. Salesforce has access to class members' chat interactions with the Websites because Salesforce contracts with the various Website owners to provide the Chat service.

**CLASS ACTION ALLEGATIONS**

35. Plaintiffs seek to represent a class of all United States residents who used Salesforce's Chat function on any Website, and whose electronic communications were intercepted or recorded by Salesforce (the "Nationwide Website Class").

36. Plaintiff Yockey seeks to represent a class of all Pennsylvania residents who used Salesforce's Chat function on any Website while in Pennsylvania, and whose electronic communications were intercepted or recorded by Salesforce (the "Pennsylvania Website Class").

37. Plaintiff Magpayo seeks to represent a class of all California residents who used Salesforce's Chat function on any Website, and whose electronic communications were intercepted or recorded by Salesforce (the "California Website Class").

38. The Nationwide Website Class, the Pennsylvania Website Class, and the California Website Class shall collectively be referred to as the "Class."

39. Plaintiff Yockey seeks to represent a subclass of all Pennsylvania residents who used Salesforce's Chat function on Rite Aid's website while in Pennsylvania, and whose electronic communications were intercepted or recorded by Salesforce (the "Rite Aid Subclass").

40. Plaintiff Magpayo seeks to represent a subclass of all California residents who used Salesforce's Chat function on Kaiser Permanente's website while in California, and whose electronic communications were intercepted or recorded by Salesforce (the "Kaiser Subclass").

41. The Rite Aid Subclass and the Kaiser Subclass shall collectively be referred to as the "Subclass."

42. Plaintiffs reserve the right to modify the foregoing Class and Subclass definitions as appropriate based on further investigation and discovery obtained in the case.

43. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the thousands.  The precise number of Class and Subclass Members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class and Subclass Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

44. Common questions of law and fact exist as to all Class and Subclass Members and predominate over questions affecting only individual Class and Subclass Members. Common legal and factual questions include, but are not limited to, whether Defendant has violated the WESCA; whether Defendant violated the CIPA; and whether Class and Subclass Members are entitled to actual and/or statutory damages for the aforementioned violations.

45. The claims of the named Plaintiffs are typical of the claims of the Class and Subclass because the named Plaintiffs, like all other class members, visited one of the Websites and had their electronic communications intercepted and disclosed to Salesforce through the use of Salesforce's Chat function.

46. Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the Class and Subclass Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class and Subclass Members will be fairly and adequately protected by Plaintiffs and their counsel.

47. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass Members. Each individual Class and Subclass Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**CAUSES OF ACTION**

**COUNT I**
**Violation of Pennsylvania Wiretap Act**
**18 Pa. Cons. Stat. § 5701, et seq.**

48. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

49. Plaintiff Yockey brings this claim individually and on behalf of the Pennsylvania Website Class and the Ride Aid Subclass against Defendant.

50. The WESCA prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. §§ 5703(1)-(3).

51. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(A).

52. At all relevant times, through its Chat API, Defendant intentionally intercepted, used, and disclosed the electronic communications between Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members on the one hand, and Website customer service agents—including but not limited to Rite Aid customer service agents—on the other hand.

53. Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members did not provide their prior consent to having their electronic communications intercepted by Defendant.

54. Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members had a justified expectation under the circumstances that their electronic communications would not

be intercepted by Defendant.  Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members reasonably believed these communications would only be accessed by the Website customer service agent with whom they were corresponding, and not by a third party like Salesforce.  Further, in the case of Plaintiff Yockey and the Rite Aid Subclass, Plaintiff Yockey and Rite Aid Subclass Members were communicating sensitive PII and PHI that a third party like Salesforce had no business acquiring.

55. Because Website owners did not disclose that Salesforce acquires the content of communications sent through its Chat API—rather than simply providing a piece of software that Website owners can use but that Salesforce has no access to—Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members were not aware that their electronic communications were being intercepted by Salesforce.  Further, Defendant cannot avoid liability "merely by showing that [Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members] unknowingly communicated directly with [Defendant's] servers." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022).

56. The wiretapping of Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members occurred in Pennsylvania, where Plaintiff Yockey and Pennsylvania Website Class and the Ride Aid Subclass Members accessed the Website and where Salesforce's Chat function routed Plaintiff Yockey's and Pennsylvania Website Class and the Ride Aid Subclass Members' electronic communications to Salesforce's own servers.  *Popa*, 52 F.4th at 131.

57. The violation of the WESCA constitutes an invasion of privacy sufficient to confer Article III standing.

58. Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members seek all relief available under 18 Pa. Cons. Stat. § 5725(A).

**COUNT II**
**Violation of California Invasion of Privacy Act**
**Cal. Penal Code § 631**

59. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

60. Plaintiffs bring this claim against Defendant individually and on behalf of the Class

and Subclass.

61. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> Or

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> Or

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> Or

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

62. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.")..

63. Salesforce's Chat API is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

64. Salesforce is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Salesforce was a third party to any communication between Plaintiffs and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

65. At all relevant times, by using Chat, Salesforce willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and putative Class and Subclass Members, on the one hand, and the various Websites—including Rite Aid's website and Kaiser Permanente's website—on the other, while the electronic communications were in transit, or were being sent from or received at any place within California. Specifically, (i) as alleged above, Salesforce intercepted each communication on the Websites while the communication was in transit; (ii) separately, each communication by Plaintiff Magpayo and California Website Class and Kaiser Subclass Members was sent from California and received by Salesforce in California; and (iii) each communication by Plaintiff Yockey and Nationwide Website Class, Pennsylvania Website Class, and Rite Aid Subclass Members was received by Salesforce in California.

66. Plaintiffs and Class and Subclass Members did not provide their prior consent to Salesforce's intentional access, interception, reading, learning, recording, and collection of Plaintiffs' and Class and Subclass Members' electronic communications. *Javier*, 2022 WL 1744107, at *2 ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the prior consent of all parties to a communication.").

67. Because Defendant is headquartered in California, a CIPA § 631 can be pursued by all users of any Website nationwide, regardless of where the user resides. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (finding that non-resident plaintiff had statutory standing under CIPA where recordings by California defendant took place in California); *see also Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4

(C.D. Cal. Oct. 13, 2016) (same and noting "[c]ourts have declined to read CIPA's legislative intent as a limitation on standing when the statute does not impose any residency requirements"); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

68. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

69. Plaintiffs and Class and Subclass Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
### Violation Of The California Invasion of Privacy Act, Cal. Penal Code § 632

70. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

71. Plaintiffs bring this claim individually and on behalf of the members of the Subclass against Defendant.

72. CIPA § 632(a) prohibits and entity from

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

73. Defendant's Chat API is an "electronic amplifying or recording device."

74. At all relevant times, the communications between Plaintiffs and Subclass Members, on the one hand, and Rite Aid and Kaiser Permanente customer service agents, on the other, were confidential.

75. At all relevant times, Salesforce intentionally used the Chat API to eavesdrop upon and record the confidential communications of Plaintiffs and Subclass Members, on the one hand, and Rite Aid and Kaiser Permanente customer service agents, on the other.

76. When communicating with Rite Aid and Kaiser Permanente, Plaintiffs and Subclass Members had an objectively reasonable expectation of privacy. Plaintiffs and Subclass Members did not reasonably expect that anyone other than Rite Aid and Kaiser Permanente customer service agents would be on the other end of the chat, and that other, third-party entities like Salesforce, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and Subclass Members. Indeed, Plaintiffs and Subclass Members each communicated PII and PHI to Rite Aid and Kaiser Permanente customer service agents, which enhances their reasonable expectation of privacy because such secretive communications should not be disclosed to or intercepted by third parties like Salesforce.

77. Plaintiffs and Subclass Members did not consent to any of Salesforce's actions. Nor have Plaintiffs or Subclass Members consented to Salesforce's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and Subclass Members.

78. Because Defendant is headquartered in California, a CIPA § 632 can be pursued by all users of any Website nationwide, regardless of where the user resides. *Bona Fide Conglomerate, Inc.*, 2016 WL 3543699, at *6; *see also Carrese*, 2016 WL 6069198, at *4; *Valentine*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011).

79. The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

80. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and Subclass Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23, naming Plaintiffs as the representatives of the Class and Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: March 31, 2023         Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
         L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
             mroberts@bursor.com

*Attorneys for Plaintiffs*